# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-1961V
UNPUBLISHED

| | |
|---|---|
| MARA CORTER,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: April 21, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Summer Pope Abel*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Sarah Christina Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT[1]

On December 15, 2017, Mara Corter filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of an influenza ("flu") vaccine administered on September 26, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that the onset of Petitioner's SIRVA occurred within 48 hours of vaccination. Specifically, Petitioner suffered symptoms manifested by pain immediately upon vaccination.

I. **Relevant Procedural History**

Petitioner filed most of her medical records on December 28, 2017. *See* Exhibits 1-5. During the January 25, 2018 initial status conference, Respondent's counsel identified potential missing records that could relate to the onset of Petitioner's alleged SIRVA. On March 12, 2018, Petitioner submitted additional medical records and an amended statement of completion. ECF 13 and ECF 14. On September 7, 2018, Respondent reported that he had reviewed the records filed by Petitioner and determined that he had sufficient information to provide a recommendation. ECF 23. Respondent also noted that he was interested in pursuing settlement negotiations. *Id*.

However, after several months of negotiation, on May 14, 2019, Petitioner filed a status report stating that "after good-faith negotiations, the parties now agree that the Chief Special Master will need to rule on Petitioner's entitlement to vaccine compensation, particularly as to onset of Petitioner's injury." ECF 35. Respondent subsequently filed a Rule 4(c) Report on June 27, 2019. ECF 37. On that same date, Petitioner filed additional medical records. ECF 38.

In a Scheduling Order filed July 17, 2019, former Chief Special Master Dorsey (who was presiding over the case at the time) reported that she had reviewed the record and determined that an onset hearing was not necessary. ECF 41. She also noted that because the ruling related to a discrete factual issue, party briefs were not necessary. *Id*. The parties were allowed the opportunity to submit additional evidence relevant to onset, and Petitioner was instructed to file a supplemental affidavit. *Id*. Pursuant to the scheduling order, Petitioner subsequently submitted additional records and a supplemental affidavit on September 26 and September 27, 2019. ECF 43 and ECF 44.

On October 18, 2019, I issued a ruling finding that the onset of Petitioner's pain occurred within 48 hours of vaccination. ECF 45. Respondent subsequently filed a "Motion For Further Explanation Of Records That Are Contrary To Fact Finding." ECF 46. In it, Respondent argued that I had not given proper weight to Petitioner's failure to report shoulder pain during two phone calls to her primary care physician (PCP) and a visit to the emergency room (ER) on September 28, 2016. *Id*. at 3. Respondent also stated that the ruling failed to address the inconsistencies between Petitioner's affidavits and her medical records. *Id*. at 4. Petitioner filed a reply to Respondent's motion on November 20, 2019. ECF 47. Therefore, this issue is ripe for adjudication.

## II.     Question for Resolution

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii)

## III.    Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1).  A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1).  "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium.  These records are also generally contemporaneous to the medical events."  *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).  However, this rule does not always apply.  In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998).  The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998).  The credibility of the individual

offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

Even in light of re-review of the existing record, as well as the particular documents referenced in Respondent's motion, I again conclude that the evidence preponderantly supports the conclusion that the onset of Petitioner's pain occurred within 48 hours of receipt of the flu vaccine. Specifically, I base my finding on the following evidence:

- Ms. Corter received an influenza vaccine in her left deltoid on September 26, 2016. Ex. 1; Ex. 2 at 2, 28.

- Petitioner did not have a history of left shoulder pain or injury. ECF No. 37.

- Petitioner reports that following the vaccination, her arm "became sore right away." Ex. 6. In her supplemental affidavit, Petitioner noted that her shoulder "started to ache immediately with the injection itself." Ex. 43.

- At a visit with her primary care physician (PCP) on November 8, 2016 (approximately six weeks post-vaccination), Petitioner complained of left shoulder pain "due to recent immunization injection." Ex. 2 at 64.

- On January 6, 2017 (more than three months after vaccine administration), Petitioner reported to her PCP she had been having local tenderness and persistent discomfort over the lateral left arm area "after having had flu vaccination." Ex. 2 at 109, 113. Physical examination revealed tenderness over the lateral aspect of the left shoulder and the PCP referred Petitioner to physical therapy. *Id*.

- Petitioner attended a physical therapy session on January 16, 2017, at which time she reported that her arm had been sore "ever since" receiving the flu vaccination on September 26, 2016. Ex. 3 at 3.

- On July 3, 2017, Petitioner presented to Dr. Michael Comstock, an orthopedic surgeon, at which time she reported acute discomfort in the "left shoulder upper arm region" after her September 26, 2016 flu vaccination. Ex. 5 at 4. Dr. Comstock noted that "given the time course of her pain post-injection, it is certainly possible that some of the injection reached the subacromial/subdeltoid bursa." *Id*. at 8.

- At a physical therapy visit on October 9, 2018, Petitioner reported left shoulder pain "due to a flu shot 2 years ago." Ex. 13 at 7.

- In an affidavit dated November 9, 2017, Petitioner reported that after her flu shot on September 26, 2016, "[her] arm became very sore almost right away." Ex. 6 at 1.

- In a supplemental affidavit dated September 26, 2019, Petitioner reported that after her flu vaccination on September 26, 2016, her left arm and shoulder started to ache "immediately" and "within an hour, [it] was so sore that it hurt to move [her] arm." Ex. 17 at 1. She also reported that "over the next couple days, the pain continued to get worse, not better." *Id*.

- Maxwell Wlodarczak, Petitioner's son, submitted a declaration dated September 26, 2019, in which he reported a telephone conversation with his mother where she complained pain and stiffness in her shoulder days after receiving a flu shot. Ex. 18 at 1.

The above facts would seem to preponderantly support the conclusion that Petitioner's onset likely began around the time of vaccination, i.e., within 48 hours of administration. However, Respondent's motion maintains that *other* evidence undermines this conclusion, because it reveals instances in which Petitioner did not complain of shoulder pain. Specifically, as noted above, Respondent references Petitioner's two phone calls to her PCP, during which she spoke with a nurse, and one visit to the ER. ECF 46. Respondent argues that because these pieces of evidence are the most contemporaneous records to the date of vaccination, they "are particularly relevant and should, at a minimum, be acknowledged in the Fact Findings." *Id.*

The medical records referenced by Respondent show that two days after vaccination (September 28, 2016), Petitioner called her PCP and reported that she had received a flu shot two days earlier and had begun experiencing abdominal cramps and bloody diarrhea as of that morning. Ex. 2 at 53. She was advised to go to the ER, where she was diagnosed with acute diverticulitis. Ex. 10. On October 6, 2016, Petitioner again called her PCP and inquired as to whether she should take an iron supplement given her vegetarianism. Ex. 2 at 58. Complaints of shoulder pain were not noted in the records from either phone call or her ER visit. Respondent objects to the failure to address these

records because of their alleged inconsistencies with Petitioner's affidavits, and thus suggests they should have been given greater weight in my earlier fact ruling.

The Vaccine Act states that "[a] special master may find that the first symptom or manifestation of onset of an injury occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded." Section 13(b)(2). Furthermore, the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance. Since medical records typically record only a fraction of all that occurs, the fact that reference to an event is omitted from the medical records may not be very significant. *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), aff'd, 968 F.2d 1226 (Fed. Cir. 1992), cert. denied sub nom. *Murphy v. Sullivan*, 113 S. Ct. 263 (1992).

Respondent's broad assertion that these particular records reveal a significant inconsistency relating to the issue of onset is overstated. During both phone calls to her PCP, Petitioner was focused on discrete issues unrelated to shoulder pain (i.e., her gastrointestinal complaints and vitamin supplements). As noted above, medical records typically record only a fraction of the total discussion; therefore, it would be expected that a nursing note would usually reflect only the primary reason for Petitioner's calls. Similarly, it is likely that Petitioner's hospital records focused on her diverticulitis, an emergent issue, rather than any ancillary complaints.

Furthermore, as discussed above, the other, subsequent medical records in the file consistently show that Petitioner reported that her shoulder pain began immediately after vaccination. She linked her shoulder pain to the vaccination at visits with PCP on multiple occasions not too long after the vaccine's administration. *See*, e.g., Ex 2. During physical therapy, she reported that her left arm had been sore "ever since" the vaccination on September 26, 2016. Ex 3. Further, at a visit with an orthopedic surgeon, Petitioner also reported acute discomfort in her left shoulder the day of her vaccination. Ex 5.

Petitioner's affidavits are therefore largely consistent with the medical records reflecting that her pain began immediately after the injection. Exs. 6 and 17. Further, the affidavits of Petitioner's son and sister both temporally relate the onset of Petitioner's pain to her flu vaccination. Exs. 18 and 19. Petitioner also addressed the two records cited by Respondent in her supplemental affidavit. Ex. 17. She explained that she did mention the pain in her arm to the nurses during each phone call, she was calling to discuss other medical conditions, and she was reassured each time that pain after injection was normal and it would go away. *Id*.

It is within my discretion to determine whether to afford greater weight to medical records or to other evidence, and I am obligated to fully consider all relevant and reliable evidence in the record. *La Londe*, 110 Fed. Cl. at 204; *Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). In this case, Petitioner consistently related the onset of her shoulder pain contemporaneously with her vaccination during in-person visits with physicians and physical therapists. These reports are also consistent with Petitioner's affidavits where she clearly links the vaccination with the immediate onset of her shoulder pain. Accordingly, I do not find that the records emphasized by Respondent substantially cast my prior ruling in doubt.

In so finding, I credit the substantive nature of Respondent's objections in light of the items of evidence referenced in his motion. SPU SIRVA cases frequently present records that do not memorialize a complaint of shoulder pain at the immediate time of the vaccination, or even contemporaneously close thereafter, leading to onset disputes. In a case like this one, where the post-vaccination medical history of somewhat stuttering, and where the first formal record of vaccination-related pain was made several weeks to a month after receipt of the vaccine, it is reasonable for Respondent to question the strength of the onset showing – and this is only amplified by the intervening, closer-in-time records that do not corroborate Petitioner's assertions regarding the commencement of her pain.

Not every case in which a Petitioner fails to seek immediate treatment for SIRVA pain, but instead relies on complaints long after the fact, should be deemed to satisfy this Table element. However, in *this* case Petitioner was able to offer credible explanations for contrary records, and enough other corroborative evidence, to meet this requirement. At most, the case was close on this issue – and the law instructs me in close cases to give the benefit of the doubt, from an evidentiary standard, to Petitioner. *See Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543 (Fed. Cir. 1994); *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005).

## V.     Scheduling Order

Given my findings of fact regarding the onset of Petitioner's pain, Respondent should evaluate and provide his current position regarding the merits of petitioner's case.

**Accordingly, Respondent shall file, by no later than <u>Friday, June 5, 2020</u>, an amended Rule 4 Report reflecting Respondent's position in light of the above fact finding.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master